IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

DENNIS MURPHY, as Personal Representative of
the ESTATE OF LARRY W. HENDERSON, and
SUSAN E. HENDERSON, CHRISTOPHER H.
HENDERSON, and KIMBERLY N. HENDERSON,
Individually,

Plaintiffs,

vs.

CATHOLIC HEALTH INITIATIVES COLORADO,
d/b/a CENTURA HEALTH–MERCY REGIONAL
MEDICAL CENTER OF DURANGO, RICHARD
A. BROWN, M.D., MICHAEL W. JOHNSON, D.D.S.,
D.M.D., M.D., HOLLY MUNNIS MEUNIER, M.D.,
OLYMPUS MEDICAL SYSTEMS CORPORATION,
And OLYMPUS AMERICA, INC.

Defendants.

---

## COMPLAINT FOR DAMAGES AND JURY DEMAND

---

Plaintiffs, through their attorneys, Bogue, Paoli & Thomas, L.L.C., and Will Ferguson &

Associates, submit their Complaint for Damages and Jury Demand as follows:

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, Dennis Murphy, is the personal representative of the Estate of Larry W.

Henderson. Mr. Murphy is a resident of New Mexico.

2.    Plaintiff, Susan E. Henderson, is the widow of Larry W. Henderson.  At all times

relevant, Mr. and Mrs. Henderson were residents of New Mexico.

3.      Plaintiff, Christopher H. Henderson, is the natural son of Larry and Susan Henderson.  At all times relevant, Christopher was a resident of New Mexico.

4.      Plaintiff, Kimberly N. Henderson, is the natural daughter of Larry and Susan Henderson.  At all times material, Kimberly was a resident of California.

5.      Defendant Catholic Health Initiatives Colorado is, and at all times relevant hereto was, a corporation licensed to do and doing business in the State of Colorado. Catholic Health Initiatives Colorado conducts business by utilizing the trade name Centura Health–Mercy Regional Medical Center of Durango ("Defendant Mercy").  Catholic Health Initiatives Colorado has a corporate address of 188 Inverness Drive West, Suite 500, Englewood, Colorado 80112. Centura Health–Mercy Regional Medical Center of Durango is physically located at 1010 Three Springs Boulevard, Durango, Colorado 81301.

6.      Defendant Catholic Health Initiatives Colorado's business includes the hiring, employment and supervision of physicians, nurses and other healthcare providers.  At all times relevant, these personnel were acting within the course and scope of their employment.

7.      Defendant Olympus Medical Systems Corporation ("Defendant Olympus"), headquartered at 2951 Ishikawa-cho, Hachioji-shi, Tokyo, Japan, is a medical device manufacturer that does business worldwide, including in the United States of America, by itself and through related companies.  Defendant Olympus operates as part of and within the larger corporate structure of Olympus America, Inc., which has a principal place of business in the United States at 3500 Corporate Parkway, Center Valley, Pennsylvania 18034.   The conglomerate has a registered agent at Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

8.      Defendant Olympus America, Inc. ("Defendant OAI") has its principal place of business in the State of Pennsylvania at 3500 Corporate Parkway, Center Valley, Pennsylvania, 18034, with a registered agent located at Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

9.      Defendants Olympus and OAI do business on an international scale and have subsidiaries and affiliated companies around the globe.  One such subsidiary/affiliated company, Olympus Imaging America, Inc., is an active corporation in Colorado, with a registered agent located at 1560 Broadway, Suite 2090, Denver, Colorado, 80202.

10.     Defendant Olympus also had a subsidiary/affiliated company, Olympus Medical Equipment America, Inc., located in Colorado, which merged into OAI.

11.     At all times relevant, Defendant Olympus was the manufacturer of the Olympus "tracheal intubating fiberscope" with the Model # LF-GP and Serial # 1313019.

12.     At all times relevant, Defendant OAI was the supplier of the Olympus "tracheal intubating fiberscope" with the Model # LF-GP and Serial # 1313019.

13.     Upon information and belief, at all times relevant Defendant, Richard A. Brown, M.D. (hereinafter referred to as "Defendant Brown"), was a licensed physician in the State of Colorado specializing in critical care medicine and pulmonology, with a principal place of practice in La Plata County, Colorado.

14.     Upon information and belief, at all relevant times Defendant, Michael W. Johnson, D.D.S., D.M.D, M.D. (hereinafter referred to as "Defendant Johnson"), was a licensed physician in the State of Colorado specializing in oral and maxillofacial surgery, with a principal place of practice in La Plata County, Colorado.

15.     Upon information and belief, at all times relevant Defendant, Holly M. Meunier, M.D. (hereinafter referred to as "Defendant Meunier"), was a licensed physician in the state of Colorado specializing in anesthesiology, with a principal place of practice in La Plata County, Colorado.

16.     The tortious conduct alleged herein occurred in La Plata County, Colorado, although the facts, circumstances, and public policy surrounding this matter mandate application of New Mexico law.

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as there is a complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

18.     Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C §1391 as the Defendant medical providers have their principal place of business in Colorado and part of the events or omissions giving rise occurred within this judicial district.  However, Defendant Catholic Health Initiatives Colorado also has a principal place of business in New Mexico and significant events or omissions giving rise to these claims also occurred within New Mexico. Accordingly, while venue is proper, the Plaintiffs allege New Mexico law should control

## II.     GENERAL ALLEGATIONS

19.     Plaintiffs incorporate Paragraphs 1 through 18 herein by reference.

20.     Around 10:30 a.m. on January 6, 2013, Mr. Henderson presented to Defendant Mercy's emergency room in Durango, Colorado.

21.     On presentation to Defendant Mercy, Mr. Henderson complained of facial pain and swelling.

22.     Around 10:40 a.m. on January 6, 2013, Marie Nicole Oury, M.D. examined Mr. Henderson.

23.     Dr. Oury diagnosed Mr. Henderson with an "odontogenic infection."

24.     Dr. Oury ordered a CT scan of Mr. Henderson's neck and soft tissue.

25.     Around 11:50 a.m. on January 6, 2013, a CT of Mr. Henderson's neck was performed.

26.     The CT scan of Mr. Henderson's neck revealed inflammatory induration involving the soft tissues of Mr. Henderson's right mandibular region, but no identifiable abscess.

27.     Dr. Oury requested Defendant Johnson consult regarding Mr. Henderson's care.

28.     On January 6, 2013, Defendant Johnson evaluated Mr. Henderson.

29.     Defendant Johnson documented that Mr. Henderson's history included obstructive sleep apnea.

30.     Defendant Johnson documented that the January 6, 2013 CT scan demonstrated right submandibular swelling with no discernible drainage fluid collection.

31.     Despite the January 6, 2013 CT scan showing no identifiable abscess or drainage fluid collection, Defendant Johnson documented that he would take Mr. Henderson to the operating room and perform an incision and drainage of his right submandibular swelling.

32.     Defendant Johnson documented that Mr. Henderson's preoperative diagnosis was right submandibular and lateral pharyngeal space infection.

33.     Around 4:43 p.m. on January 6, 2013, Mr. Henderson was taken to the operating room for the incision and drainage.

34.     Around 4:43 p.m. on January 6, 2013, Defendant Meunier intubated Mr. Henderson using a 7 mm endotracheal tube.

35.     After intubating Mr. Henderson, Defendant Meunier used a fiberscope to view Mr. Henderson's airway.

36.     The fiberscope Defendant Meunier utilized was an Olympus "tracheal intubating fiberscope" Model # LF-GP with a Serial # 1313019.

37.     This Olympus "tracheal intubating fiberscope" medical device, Model # LF-GP, Serial # 1313019 was all designed, tested, fabricated, assembled, produced, and manufactured, by Defendant Olympus.

38.     This Olympus "tracheal intubating fiberscope" medical device, Model # LF-GP, Serial # 1313019 was all marketed, sold, warranted and distributed by Defendant OAI.

39.     Defendant Meunier then retracted the fiberscope.

40.     Defendant Meunier's retraction of the fiberscope revealed that the tip of the fiberscope had come off during her use of the instrument.

41.     Defendants Meunier and Johnson decided to proceed with the operation before locating the tip of the fiberscope.

42.     Defendant Johnson documented that after the tip of the fiberscope had been lost and before it had been located, he performed the following procedures on Mr. Henderson: incision and drainage of the infection.

43.     Following the irrigation and debridement procedure, Defendants Meunier and Johnson requested Defendant Brown evaluate and possibly remove the missing tip of the fiberscope and to possibly admit Mr. Henderson to the intensive care unit (hereinafter referred to as "ICU") if a bed could be made available.

44.     Defendant Brown documented that he noted a chest x-ray had been completed and showed a small metallic density in what appeared to be the takeoff of Mr. Henderson's left main stem bronchus.

45.     Defendant Brown discussed Mr. Henderson's condition with Defendants Johnson and Meunier.

46.     Defendant Brown further noted that during his consult he stated that he could go in and see if he could observe the foreign body, but that he probably would not be able to stay inside the small endotracheal tube in place with his bronchoscope, since the bronchoscope essentially occluded the endotracheal tube and, therefore, ventilation and oxygenation would be difficult if he tried to remove the foreign body with the bronchoscope.

47.     Defendant Brown documented that Defendant Meunier told him Mr. Henderson's saturations had been somewhat tenuous and never significantly above 96%.

48.     Medical protocol was for Mr. Henderson to remain intubated overnight in the ICU to allow his swelling to resolve, which would permit safer extraction of the foreign body.

49.     However, the ICU was full at the time Defendant Brown consulted on Mr. Henderson's care.

50.     Because the ICU was full at the time Defendant Brown consulted on Mr. Henderson's care, Defendants Johnson, Meunier, and Brown chose to attempt removal of the foreign body in the operating room without permitting the swelling to subside.

51.     Defendants Brown, Johnson, Meunier, and Mercy, by and through its duly authorized agents and employees, including the surgical team, failed to obtain informed consent from Larry Henderson or Susan Henderson to perform the extraction procedure.

52.     Defendant Brown proceeded to insert his bronchoscope into the endotracheal tube placed by Defendant Meunier.

53.     Defendant Brown documented that he located the foreign body at the takeoff of Mr. Henderson's left main stem bronchus.

54.     After identifying the foreign body, Defendant Brown did not remove the foreign body.

55.     Defendant Brown requested Defendant Meunier insert either a 7.5 or 8 mm endotracheal tube to allow Defendant Brown time to retrieve the foreign body and to ventilate and oxygenate Mr. Henderson.

56.     Defendants Brown, Johnson and Meunier then decided that an endotracheal tube change would take place utilizing a tube changer and an 8 mm endotracheal tube would be placed.

57.     Defendants Meunier and Mercy, by and through its duly authorized agents and employees, including the surgical team, removed the 7 mm endotracheal tube and inserted an 8 mm endotracheal tube using a tube changer.

58.     However, Defendants Brown, Meunier, Johnson, and Mercy, by and through its duly authorized agents and employees, including the surgical team, failed to secure Mr. Henderson's airway during the exchange of the 7 mm endotracheal tube with the 8 mm endotracheal tube.

59.     Upon information and belief, either respiratory therapist Charles Cole or respiratory therapist Scott Debolt, pulled out the endotracheal tube and lost the airway. At all times relevant, Charles Cole and Scott Debolt were agents and employees of Defendant Mercy.

60.     After the new endotracheal tube was placed, Defendant Brown inserted his bronchoscope.

61.     Defendant Brown documented that when he inserted his bronchoscope into the newly placed 8 mm endotracheal tube it appeared that the endotracheal tube was lodged up against the wall of Mr. Henderson's upper airway possibly at or above his vocal cords.

62.     Defendant Brown then removed his bronchoscope.

63.     Defendant Brown then reinserted his bronchoscope into the newly placed 8 mm endotracheal tube to again assess whether he could enter Mr. Henderson's airway.

64.     Defendant Brown documented that he determined it was not possible to enter Mr. Henderson's airway with the current placement of the 8 mm endotracheal tube so he removed the bronchoscope.

65.     Defendant Brown documented that through the use of the 8 mm endotracheal tube and aggressive ventilation Mr. Henderson's oxygen saturations were being maintained somewhat; however, ongoing ventilation and oxygenation became problematic.

66.     Defendants Brown, Johnson, Meunier and Mercy, by and through its duly authorized agents and employees, including the surgical team, then decided to replace the 8 mm endotracheal tube.

67.     Defendant Meunier then attempted to place a third endotracheal tube in Mr. Henderson.

68.     The third endotracheal tube was a 7 mm endotracheal tube.

69.     During the attempted placement of the third endotracheal, Defendant Meunier used a glidescope camera and a fiberoptic scope for assistance.

70.     Defendant Brown documented that Defendant Meunier was able to properly place the third endotracheal tube and administer aggressive bag ventilation.

71.     However, as many as forty-five (45) minutes passed before Defendants Brown, Johnson, Meunier, and Mercy's surgical team regained control of Mr. Henderson's airway.

72.     During the operation, Mr. Henderson's oxygen saturation percentage dropped from the 90's to the 50's.

73.     Defendant Brown documented that during this time, Mr. Henderson's oxygen saturation had declined and he had evolved essentially pulselessness.

74.     As Defendant Meunier regained Mr. Henderson's airway with placement of the third endotracheal tube, Mr. Henderson had no pulse, was hypoxic, went into cardiac arrest and a full code ensued.

75.     Defendants Brown, Meunier, and Johnson directed and assisted in the administration of epinephrine, vasopressin, CPR, and atropine to stabilize Mr. Henderson.

76.     At the conclusion of the procedure around 6 p.m. on January 6, 2013, Mr. Henderson's pulse returned.

77.     Around 8 p.m. on January 6, 2013, Mr. Henderson was transferred to the ICU.

78.     Due to the oxygen deprivation Mr. Henderson suffered while Defendants Brown, Meunier, and Johnson operated on him, Mr. Henderson suffered a catastrophic anoxic brain injury.

79.     At all times relevant, Defendants Brown, Johnson, Meunier, and Mercy, by and through its duly authorized agents and employees, including the surgical team, failed to follow the difficult airway algorithm of the American Society of Anesthesiologists.

80.     Defendants Brown, Johnson, Meunier, and Mercy, by and through its duly authorized agents and employees, including the surgical team, never attempted a tracheotomy or cricothyrotomy.

81.     Defendants Brown, Johnson, Meunier, and Mercy, by and through its duly authorized agents and employees, including the surgical team, never retrieved the foreign body.

82.     Larry Henderson remained in a vegetative state in the ICU until he died on January 25, 2013.

83.     On March 1, 2013, an autopsy of Mr. Henderson was completed by Robert A. Kurtzman, D.O.

84.     Dr. Kurtzman determined the immediate causes of Mr. Henderson's death were anoxic encephalopathy and complications of anesthesia.

85.     As a result of the conduct of Defendants failing to properly evaluate, treat and care for Mr. Henderson, Mr. Henderson died.

86.     On April 5, 2013, Defendant Mercy released an "Occurrence Summary Report" alleging the January 6, 2013, occurrence described herein was an "Equip Malfunction/Misuse."

87.     Defendant Mercy further alleged "there was no misuse of the equipment" and therefore alleged the entire occurrence was caused by Defendant Olympus's defective and negligently designed product.

88.     Defendant Mercy was under a duty to log and track each use of the intubating scope, including the inspection process and maintenance for each use.

89.     Upon information and belief, Defendant Mercy alleges the occurrence complained of herein was caused by "2 glue bands at the end of the [defective and negligently designed] scope" which failed.

90.     Upon information and belief, the medical provider Defendants failed to preserve Larry Henderson's complete medical records, including, specifically, the vital sign and waveform information stored on the electronic medical equipment in the operating room.

91.     Upon information and belief, Defendant Olympus participated in and/or sanctioned and ratified the conduct of the medical provider defendants.

92.     Upon information and belief, Defendant Olympus failed to preserve the complete records for its defective medical device.

### III.     FIRST CLAIM FOR RELIEF
**(Wrongful Death – Richard Brown, M.D.)**

93.     Plaintiffs incorporate Paragraphs 1 through 92 herein by reference.

94.     On or about January 6, 2013, Mr. Henderson placed himself under the care and treatment of Defendant Brown for the purpose of care and treatment.

95.     Defendant Brown was negligent in his care of Mr. Henderson.

96.     With respect to their care of Mr. Henderson, Defendant Brown owed a duty to exercise that degree of skill, care, caution, diligence, and foresight exercised by and expected of physicians practicing in his specialty under similar circumstances.

97.     Defendant Brown was negligent in his care and treatment of Mr. Henderson including, but not limited to:

    a.  Failing to reasonably, properly and timely evaluate, assess, monitor and provide care and treatment to Mr. Henderson for his condition;

    b.  Failing to consider alternative treatments for Mr. Henderson's condition;

    c.  Failing to adequately and timely secure Mr. Henderson's airway;

    d.  Failing to maintain Mr. Henderson's airway;

    e.  Failing to reasonably and properly inform Mr. and Mrs. Henderson of the risk of and alternatives to Mr. Henderson's care and treatment of his condition; and

    f.  Failing to properly consult with other medical facilities and or medical specialists.

98.     As a direct and proximate result of the acts and omissions of Defendant Brown, Mr. Henderson died and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries, and damages allowed by law.

## IV.    SECOND CLAIM FOR RELIEF
### (Wrongful Death – Michael Johnson, D.D.S., D.M.T., M.D.)

99.     Plaintiffs incorporate Paragraphs 1 through 98 herein by reference.

100.    On or about January 6, 2013, Mr. Henderson placed himself under the care and treatment of Defendant Johnson for the purpose of care and treatment.

101.    Defendant Johnson was negligent in his care of Mr. Henderson.

102.    With respect to his care of Mr. Henderson, Defendant Johnson owed a duty to exercise that degree of skill, care, caution, diligence, and foresight exercised by and expected of physicians practicing in his specialty under similar circumstances.

103.    Defendant Johnson was negligent in his care and treatment of Mr. Henderson including, but not limited to:

      a.    Failing to reasonably, properly and timely evaluate, assess, monitor and provide care and treatment to Mr. Henderson for his condition;

      b.    Failing to consider alternative treatments for Mr. Henderson's condition;

      c.    Failing to adequately and timely secure Mr. Henderson's airway;

      d.    Failing to maintain Mr. Henderson's airway;

      e.    Failing to remove the foreign body from Mr. Henderson's airway prior to proceeding with the incision and drainage procedures;

      f.    Failing to reasonably and properly inform Mr. and Mrs. Henderson of the risk of and alternatives to Mr. Henderson's care and treatment of his condition; and

      g.    Failing to properly consult with other medical facilities and or medical specialists.

104.    As a direct and proximate result of the acts and omissions of Defendant Johnson, Mr. Henderson died and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries, and damages allowed by law.

## V.    THIRD CLAIM FOR RELIEF
### (Wrongful Death – Holly M. Meunier, M.D.)

105.    Plaintiffs incorporate Paragraphs 1 through 104 herein by reference.

106.    On or about January 6, 2013, Mr. Henderson placed himself under the care and treatment of Defendant Meunier for the purpose of care and treatment.

107.    Defendant Meunier was negligent in her care of Mr. Henderson.

108.    With respect to her care of Mr. Henderson, Defendant Meunier owed a duty to exercise that degree of skill, care, caution, diligence, and foresight exercised by and expected of physicians practicing in her specialty under similar circumstances.

109.    Defendants Brown, Johnson, and Meunier were negligent in their care and treatment of Mr. Henderson including, but not limited to:

    a.    Failing to reasonably, properly and timely evaluate, assess, monitor and provide care and treatment to Mr. Henderson for his condition;

    b.    Failing to consider alternative treatments for Mr. Henderson's condition;

    c.    Failing to adequately and timely secure Mr. Henderson's airway;

    d.    Failing to maintain Mr. Henderson's airway;

    e.    Failing to remove the foreign body from Mr. Henderson's airway prior to proceeding with the incision and drainage procedures;

f.    Failing to reasonably and properly inform Mr. and Mrs. Henderson of the risk of and alternatives to Mr. Henderson's care and treatment of his condition; and

g.    Failing to properly consult with other medical facilities and or medical specialists.

110.    As a direct and proximate result of the acts and omissions of Defendant Meunier, Mr. Henderson died and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries, and damages allowed by law.

### VI.    FOURTH CLAIM FOR RELIEF
**(Wrongful Death – Catholic Health Initiatives Colorado d/b/a Centura Health–Mercy Regional Medical Center of Durango)**

111.    Plaintiffs incorporate Paragraphs 1 through 110 herein by reference.

112.    On or about January 6, 2013, Mr. Henderson placed himself under the care and treatment of Defendant Mercy for the care and treatment of his condition.

113.    Defendant Mercy, acting through its agents, employees, officers, and directors, including, but not limited to, registered nurses, certified nursing assistants, anesthesia techs, respiratory therapists, nurse practitioners, licensed practical nurses and other employees, all of whom were acting within the course and scope of their employment or within their authority as agents and employees of Mercy, was negligent in its care and treatment of Mr. Henderson, including, but not limited to:

16

a.   Failing to appropriately monitor Mr. Henderson's vital signs and oxygen saturations;

b.   Failing to adequately and timely secure Mr. Henderson's airway;

c.   Failing to maintain Mr. Henderson's airway;

d.   Failing to reasonably and properly inform Mr. and Mrs. Henderson of the risk of and alternatives to Mr. Henderson's care and treatment of his condition;

e.   Failing to activate the chain of command;

f.   Failing to consult with other medical facilities and specialists in a timely manner;

g.   Failing to have policies and protocols in place which required adequate training and supervision of its agents, employees, officers, and directors in the proper care and treatment of patients like Mr. Henderson;

h.   Failing to hire reasonably qualified respiratory therapists and other employees and or agents;

i.   Failing to adequately train its respiratory therapists and other employees and or agents;

j.   Failing to ensure the competency of its respiratory therapists and other employees and or agents;

k.   Failing to have an educational program in place to ensure the adequate training and competency of its respiratory therapists and other employees and or agents;

l.    Failing to properly supervise its respiratory therapists and other employees and or agents;

m.   Failing to adequately furnish and maintain its equipment, such as the Olympus endotracheal scope at issue;

n.    Failing to properly train and educate its respiratory therapists and other employees and or agents on the use the Olympus endotracheal scope at issue;

o.    Failing to properly supervise its respiratory therapists and other employees and or agents using the Olympus endotracheal scope at issue;

p.    Failing to reasonably and properly assess, examine, diagnose, monitor and treat Mr. Henderson; and

q.    Failing to preserve Mr. Henderson's complete medical records, including, specifically, the vital sign and waveform information stored on the electronic medical equipment in the operating room.

114.   Defendant Mercy is vicariously liable for the negligent acts and omissions of its employees, agents, and ostensible agents including, but not limited to, Charles Cole, Scott Debolt, respiratory therapists, nurses, and other personnel and physicians.

115.    As a direct and proximate result of the negligence of Defendant Mercy, including its negligence by and through its duly authorized agents and employees, Mr. Henderson died and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries and damages allowed by law.

## VII.   FIFTH CLAIM FOR RELIEF
**(Lack of Informed Consent – Richard Brown, M.D.; Michael W. Johnson, D.D.S., D.M.D,
M.D.; Holly M. Meunier, M.D.; and Catholic Health Initiatives Colorado d/b/a Centura
Health–Mercy Regional Medical Center of Durango)**

116.    Plaintiffs incorporate Paragraphs 1 through 115 herein by reference.

117.    On or about January 6, 2013, Defendants Brown, Johnson, Meunier, and Mercy, by and through its duly authorized agents and employees, including the surgical team, performed an attempted retrieval of a foreign object procedure on Mr. Henderson.

118.    Defendants Brown, Johnson, Meunier, and Mercy negligently failed to obtain Mr. and or Mrs. Henderson's informed consent before performing this procedure by failing to inform Mr. or Mrs. Henderson at all of the substantial risk of this procedure, nor the alternatives to the treatment proposed.

119.    A reasonable person in the same or similar circumstances as Mr. and Mrs. Henderson would not have consented to the attempted retrieval of a foreign object procedure had he been given the information required for informed consent.

120.    As a result of Defendants Brown, Johnson, Meunier, and Mercy's failure to obtain Mr. and/or Mrs. Henderson's informed consent, Mr. Henderson died and Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries, and damages allowed by law.

## VIII.   SIXTH CLAIM FOR RELIEF
**(Strict Liability – Olympus Medical Systems Corporation and Olympus America, Inc.)**

121.    Plaintiffs incorporate Paragraphs 1 through 120 herein by reference.

122.     Defendant Olympus designed, developed, manufactured, produced, assembled, tested and sold the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019.

123.     Defendant OAI marketed, warranted, sold, and placed the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 into the stream of commerce.

124.     At all relevant times, Defendants Olympus and OAI were engaged in the business of selling the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 for sale, resale, use or consumption.

125.     Defendants Olympus and OAI sold the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with Serial # 1313019 utilized in the operation performed on Mr. Henderson on January 6, 2013.

126.     The subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 was defective, unreasonably dangerous, and unfit for its intended use at the time it was sold by Defendants Olympus and OAI or left Defendants Olympus and OAI's control.

127.     The subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 was expected to and did reach the consumer or user without substantial change in the condition in which it was sold.

128.     Mr. Henderson was a person who would reasonably be expected to be affected by the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019.

129.    As a direct and proximate cause of Defendants Olympus and OAI's acts and omissions, The subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 failed and broke, causing Mr. Henderson to die and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries and damages allowed by law.

### IX.    SEVENTH CLAIM FOR RELIEF
### (Negligence – Olympus Medical Systems Corporation and Olympus America, Inc.)

130.    Plaintiffs incorporate Paragraphs 1 through 129 herein by reference.

131.    Defendants Olympus and OAI owed Mr. Henderson a duty to exercise reasonable care in the design, manufacture and fabrication of the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 to ensure that it could withstand normal use and wear and tear.

132.    Defendants Olympus and OAI failed to use reasonable care to prevent the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 from creating an unreasonable risk of harm to the person who might reasonably be expected to use or be affected by the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019, while it was being used in the manner Defendants Olympus and OAI might have reasonably expected.

133.    Defendants Olympus and OAI breached the duties owed to Mr. Henderson and were negligent by negligently designing, manufacturing, fabricating, testing, inspecting, assembling and packaging the subject Olympus Model # LF-GP "tracheal intubating fiberscope"

with a Serial # 1313019 and its components, and in the selection of materials used in the manufacture, fabrication, assembly, and packaging of the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019.

134.    Defendants Olympus and OAI also failed to preserve the complete records for its defective medical device.

135.    As a direct and proximate cause of Defendants Olympus and OAI's acts and omissions, the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 failed and broke, causing Mr. Henderson to die and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries and damages allowed by law.

### X.    EIGHTH CLAIM FOR RELIEF
**(Breach of Express Warranty – Olympus Medical Systems Corporation and Olympus America Inc.)**

136.    Plaintiffs incorporate Paragraphs 1 through 135 herein by reference.

137.    Defendants Olympus and OAI owed Mr. Henderson expressly warranted the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 was of merchantable quality through their advertisements, actions, and representatives.

138.    Mr. Henderson was a person who was reasonably expected to be affected by the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019.

139.    The subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 was not as warranted.

140.     Within a reasonable time after Plaintiffs discovered or should have discovered the breach of warranty, Plaintiffs and/or his physician and/or hospital staff on his behalf notified Defendants Olympus and OAI of such breach.

141.     As a direct and proximate result of Defendants Olympus and OAI's breach of express warranty of merchantable quality, Mr. Henderson died and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries and damages allowed by law.

## XI.    NINTH CLAIM FOR RELIEF
**(Breach of Implied Warranty – Olympus Medical Systems Corporation and Olympus America Inc.)**

142.     Plaintiffs incorporate Paragraphs 1 through 141 herein by reference.

143.     Mr. Henderson is a person who was reasonably expected to be affected by the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019.

144.     Defendants Olympus and OAI were merchants with respect to the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019.

145.     The subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 was not of merchantable quality at the time of sale.

146.     Within a reasonable time after Plaintiff discovered or should have discovered the breach of warranty, Plaintiff or others on his behalf notified Defendants Olympus and OAI of such breach.

147.     The subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 was not merchantable for the following reasons, among others:

a.   The device failed to pass without objection in the trade;

b.   The device failed to be of fair and average quality;

c.   The device failed to be fit for the ordinary purposes for which it was used.

148.   As a direct and proximate result of Defendants Olympus and OAI's breach of express warranty of merchantable quality, Mr. Henderson died and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries and damages allowed by law.

## XII.   TENTH CLAIM FOR RELIEF
**(Breach of Implied Warranty of Fitness – Olympus Medical Systems Corporation and Olympus America Inc.)**

149.   Plaintiffs incorporate Paragraphs 1 through 148 herein by reference.

150.   Defendants Olympus and OAI impliedly warranted the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 to be suitable for the particular purpose of: facilitating the intubation process under vision.

151.   Mr. Henderson was a person who was reasonably expected to use or be affected by the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 during intubation on January 6, 2013.

152.   The subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 used during Mr. Henderson's intubation on January 6, 2013, was not suitable or fit for the particular purpose for which it was warranted.

153.    Within a reasonable time after Plaintiffs discovered or should have discovered the breach of warranty, Plaintiffs or others on their behalf notified Defendants Olympus and OAI of such breach.

154.    As a direct and proximate result of Defendants Olympus and OAI's breach of express warranty of merchantable quality, Mr. Henderson died and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries and damages allowed by law.

## XIII.   ELEVENTH CLAIM FOR RELIEF
### (Failure to Warn – Olympus Medical Systems Corporation and Olympus America Inc.)

155.    Plaintiffs incorporate Paragraphs 1 through 154 herein by reference.

156.    Defendants Olympus and OAI manufactured and distributed, respectively, the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019.

157.    The subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 had potential risks, including the risk that the tip of the fiberscope could fall off while the fiberscope was being used to intubate a patient such as Mr. Henderson, that were known or knowable in light of Defendants Olympus and OAI's knowledge of the subject device and its use in the intended or reasonably foreseeable way subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 had potential risks, including the risk that the tip of the fiberscope could fall off while the fiberscope was being used to intubate a patient such as Mr. Henderson, presented a substantial danger when the device was used or misused in an intended or reasonably foreseeable way.

158.    Ordinary consumers of the subject Olympus Model # LF-GP "tracheal intubating fiberscope" with a Serial # 1313019 would not have recognized the potential risks, including the risk that the tip of the fiberscope could fall off while the fiberscope was being used to intubate a patient such as Mr. Henderson.

159.    Defendants Olympus and OAI failed to adequately warn or instruct of the potential risks, including the risk that the tip of the fiberscope could fall off while the fiberscope was being used to intubate a patient such as Mr. Henderson.

160.    As a direct and proximate result of Defendants Olympus and OAI's failure to provide sufficient instructions or warnings, Mr. Henderson died and the Plaintiffs suffered the wrongful death of Mr. Henderson, grief, loss of companionship, pain and suffering, emotional stress and other non-economic losses, as well as economic losses, including funeral expenses and other losses, injuries and damages allowed by law.

WHEREFORE, Plaintiffs suffered the wrongful death of Larry Henderson on January 25, 2013, and pray for compensatory damages against the Defendants and each of them in an amount to be determined by the trier of fact, for costs, expert witness fees, attorneys' fees, filing fees, interest from January 25, 2013, and for other further relief in accordance with applicable law and as this Court may deem appropriate.

**PLAINTIFFS REQUEST TRIAL TO A JURY.**

Respectfully submitted this 5th day of January, 2015.

s/ Isobel S. Thomas

Isobel S. Thomas
Matthew R. Laird
BOGUE, PAOLI & THOMAS, L.L.C.
1401 17th Street, Suite 320
Denver, Colorado 80202
Telephone:   (303) 382-1990
Facsimile:   (303) 382-1982
ithomas@bogue-paoli.com
mlaird@bogue-paoli.com

-and-

Adrian O. Vega
Robert Ortiz
Jeffrey S. Trespel
WILL FERGUSON & ASSOCIATES
1720 Louisiana Boulevard NE, Suite 100
Albuquerque, New Mexico 87110
Telephone:     (505) 243-5566
Facsimile:      (505) 243-5699
Adrian@fergusonlaw.com
Robert@fergusonlaw.com
Jeff@fergusonlaw.com
Attorneys for Plaintiffs

**Plaintiffs' Addresses**:

Dennis Murphy, as Personal Representative of the Estate of Larry W. Henderson
303 Paseo de Peralta
Santa Fe, New Mexico 87501

Susan Henderson
124 Road 2553
Aztec, New Mexico 87410

Christopher H. Henderson
1210 North Lincoln Avenue
Farmington, New Mexico 87401

Kimberly N. Henderson
53043 Middle Ridge Drive
Idyllwild, California 92549